


Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

May 21, 2025

**Brian E. Klein**
Direct (424) 652-7814
bklein@waymakerlaw.com

***Via ECF***

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: United States v. Storm, 23 Cr. 430 (KPF)**

Dear Judge Failla:

On behalf of our client Roman Storm, we write to raise two points in response to the government's opposition to Mr. Storm's May 16, 2025 letter motion regarding the government's failure to meet its *Brady* obligations. (*See* Dkt. 149 ("Opp."); *see also* Dkt. 148 ("Mot.").)

*First*, and perhaps most tellingly, the government fails to disclose when the Storm prosecution team became aware of the Samourai prosecution team's communications with FinCEN. There is reason to believe that this prosecution team has known about those communications since August 2023. In its opposition, the government only states that it has "neither sought nor obtained an opinion from any employee at FinCEN—or any other government agency—regarding whether the Tornado Cash service is subject to registration obligations." (Opp. at 4.) But given the timing of the Samourai prosecution team's communications with FinCEN in August 2023—around the time that this Indictment was unsealed—it is entirely possible that this prosecution team did not seek an opinion from FinCEN *precisely because* it was already aware of FinCEN's position regarding the issue of control under 18 U.S.C. § 1960, which materially undermines this prosecution.

More importantly, this Court should require the Storm prosecutors to disclose when they learned of the communications because, to the extent they knew of them before filing the government's oppositions to Mr. Storm's motions to dismiss and compel, they misled this Court in opposing those motions. For example, in its opposition to the motion to dismiss, the government argued, in a section called "FinCEN Guidance Does Not Suggest That Control of Funds Is Required," that FinCEN guidance "undermines [Storm's] argument" and supported its argument that "neither the statue nor the regulations require the business to take control of the funds." (Dkt. 53 at 31.) These claims are, in fact, directly contrary to what Kevin O'Connor, FinCEN's Chief of the Virtual Assets and Emerging Technology Section in the Enforcement and Compliance Division, told the Samourai prosecution team when he said that FinCEN guidance had "generally focused on custody of cryptocurrency in the question of determining whether an entity is acting as an MSB [money services business]. Because Samourai"—like Tornado Cash—"did not take






'custody' of the cryptocurrency . . . that would strongly suggest that Samourai was NOT acting as an MSB." (Mot., Ex. A at 2.).[1] Thus, to meaningfully assess whether the government has met its *Brady* obligations—and indeed whether it has been forthright with this Court—this Court should order the government to disclose when it became aware of those FinCEN communications.

*Second*, the government's attempts to downplay the significance of the disclosures in the Samourai case should be rejected. In its opposition, the government notes that it no longer intends to proceed to trial on the first object of the conspiracy charged in Count Two, alleging a failure to register under Section 1960(b)(1)(B), and thus will not be calling a witness from FinCEN. (Opp. at 2, n.2.) In doing so, the government claims that the Samourai disclosures "are irrelevant to the remaining object of Count Two, a violation of 18 U.S.C. § 1960(b)(1)(C), which criminalizes the knowing transmission of crime proceeds." (*Id.* at 3.)[2] The government overlooks that under the statute, whether Tornado Cash is a "money transmitting business" is part of (b)(1) and thus relevant *both* to subsections (B) and (C). The government essentially argues that the same statute defines "money transmitting" to mean two different things depending upon the factual context. This Court should reject the government's contortion of Section 1960. As set forth in Mr. Storm's reply in support of his motion to dismiss, "the same word, in the same statutory provision" cannot have "different meanings in different factual contexts." (*See* Dkt. 58 at 4 n.1 (citing *United States v. Santos*, 553 U.S. 507, 522 (2008); *see also United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 92 n.10 (D.D.C. 2008) ("[T]here is virtually no substantive difference, nor did Congress intend there to be a substantive difference, between the terms 'money transmitting' in Section 1960 and 'money transmitting business' in Section 5330.").) The government contends that this Court addressed this issue in ruling on the motion to dismiss. (Opp. at 3.) But the government was still proceeding under both subsections (B) and (C) at the time, and this Court explained it would not "get into the minutia of all the various definitions" in finding that the government had adequately charged Count Two. (9/26/2024 Hearing Tr. at 20:14-18.)

---

[1] Although the government attempts to distinguish Samourai Wallet and Tornado Cash on the unspecified grounds that "they operated quite differently," the disclosures in the Samourai case make clear that the FinCEN officials' position was based on the noncustodial nature of Samourai Wallet—a core feature of Tornado Cash, notwithstanding the government's characterization of it as a mere "superficial similarit[y]." (Opp. at 4; *see also* Mot., Ex. A at 3.)

[2] The government also discloses for the first time that, "in an abundance of caution regarding the definition of 'financial institution' in the money laundering statute, the [g]overnment also does not intend to proceed on its 'financial institution' theory of Count One." (Opp. at 3.) Yet in opposing Mr. Storm's motion to dismiss Count One, the government claimed, in response to a hypothetical from the Court regarding WhatsApp, that the "regulated context in which this case occurs is relevant not just to the 1960, but to the 1956 charge as well." (7/12/2024 Hearing Tr. at 89:8-25.) The government then proceeded to distinguish WhatsApp from "financial institutions that process financial transactions," which the government argued can be required to "maintain data." (*Id.*) The government appears to have abandoned that position as well.






Additionally, the definition of "money transmitting" set forth in Section 1960(b)(2) also applies to (b)(1)(C), and the term is defined to include "transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." In determining what constitutes "transferring funds on behalf of the public," it is reasonable to look to regulatory guidance on what constitutes a money transmitting business under another statute explicitly referenced in the subject statute. Indeed, that is precisely what the cryptocurrency industry has done, as reflected in the various letters sent to Congress and the White House.[3] Mr. Storm attempted to comply in good faith with regulations interpreting the scope of liability under Section 1960, and the disclosures in the Samourai case go to the heart of whether his interpretation was reasonable (which it was). As such, the Samourai disclosures are clearly *Brady* material.

For the reasons set forth above and in Mr. Storm's letter motion, this Court should grant the *Brady* motion.

Respectfully submitted,

Brian E. Klein
Keri Curtis Axel
Becky S. James
Kevin M. Casey
Viviana Andazola Marquez
Waymaker LLP

-and-

David E. Patton
Nicholas Pavlis
Hecker Fink LLP

*Attorneys for Roman Storm*

---

[3] *See, e.g.,* Letter from DeFi Education Fund's Coalition of Decentralized Finance Companies to Congress (Mar. 26, 2025) (on file at https://www.defieducationfund.org/_files/ugd/84ba66_903d8c40e59a422e81b3abe393ca9536.pdf); Letter from DeFi Education Fund's Coalition of Decentralized Finance Companies to Hon. David Sacks, White House AI and Crypto Czar (Apr. 7, 2025) (on file at https://www.defieducationfund.org/_files/ugd/84ba66_0cbce4d374bb48e5bd2911e0ed211ecf.pdf).